IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL PUNZELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 08-3193-CV-S-NKL-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

O R D E R

Plaintiff Michael Punzell ("Punzell") challenges the Social Security Commissioner's ("Commissioner") denial of his application for disability and disability insurance benefits under Title II of the Social Security Act 42 U.S.C. §§ 401, *et seq*. Punzell filed an application for Disability Insurance Benefits on January 12, 2005. After a hearing, an Administrative Law Judge ("ALJ") found that Punzell was not disabled under the Social Security Act. On March 26, 2008, after reviewing additional evidence, the Appeals Council of the Social Security Administration denied Punzell's request for review of the ALJ's decision. Punzell has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g).

Punzell argues that the ALJ improperly discounted his credibility and that the residual functional capacity determined by the ALJ does not reflect the severity of his limitations. The complete facts and arguments are presented in the parties' briefs and will be duplicated

1

here only to the extent necessary.[1] The Commissioner's decision is reversed and this Court remands with instructions to award benefits.

## I. Facts and Procedural History

Punzell served as a medic with the 24th Evac Hospital in Vietnam from July 13, 1967 through February 16, 1969. From his return from Vietnam to 2003, Punzell posted earnings ranging from $1,300 to $39,000 every year except 1997. In 2003, Punzell posted earnings of just over $11,000. He had no earnings in 2004, 2005, or 2006. Punzell performed numerous jobs including work as an office clerk for an insurance company, as a lawn mower, and as a salesman selling auto equipment and air tanks.

### A. Medical Treatment History

On January 10, 2003, Punzell reported to Dr. Norman J. Mechlin, M.D., at the Ferrell-Duncan Clinic in Springfield, Missouri, with reports of dizziness and headaches. He reported that he suffered five to six episodes of dizziness a year, each followed by a headache. Dr. Mechlin diagnosed Punzell with headaches, a history of previous headaches, and elevated blood pressure.

When Punzell returned the next year on February 3, 2004, he reported that he had had dizzy spells in the past. While no specific cause for the dizzy spells could be determined, Dr. Mechlin opined that Punzell may have been suffering from a labyrinthitis.[2]

---

[1] Portions of the parties' briefs are adopted without quotation designated.

[2] Labyrinthitis is the "[i]nflammation of the labyrinth (the inner ear) usually accompanied by vertigo and deafness." STEDMAN'S MEDICAL DICTIONARY 1038, (28th ed. 2006).

2

Punzell reported to Dr. Beryl J. Parrish, M.D., at a Department of Veterans Affairs Hospital ("VA Hospital") on April 22, 2004, to establish care. During PTSD screening, Punzell reported that he suffered nightmares about his Vietnam experience, that he avoided situations that reminded him of his experience, that he was constantly on guard, watchful, and easily startled, and that he felt numb or detached from others, activities, and his surroundings. Punzell also reported intermittent severe vertigo where the room would spin and he would lose his balance. He said that these episodes occurred about 3-4 times a year and lasted 10-15 minutes at a time. Punzell reported that he had times when he felt "he would be better off not being here," but said that he had no intentions of acting on these thoughts at the time. Dr. Parrish noted that Punzell appeared mildly depressed. Punzell was diagnosed with depression, episodic vertigo, osteoarthritis in both hands, subjective decreased hearing on the left with tinnitus,[3] and a history of elevated intraocular pressure. Dr. Parrish started Punzell on Fluoxetine for depression. When Punzell returned on May 20, 2004, he reported no real change in his depression from the Fluoxetine, and reported he felt slower and more tired on the medication.

On August 2, 2004, upon referral of Dr. Parrish, Punzell reported to Dr. Joekie Brouwer, M.D., at the VA Hospital. A mental status exam revealed that Punzell's mood was

---

[3] Tinnitus is the "[p]erception of a sound in the absence of an environmental accoustic stimulus. The sound can be a pure tone or noise including (ringing, whistling, hissing, roaring, or booming) in the ears. Tinnitus is usually associated with a loss of hearing." *Id.* at 1992.

3

labile[4] with easy tearfulness.  He reported carrying a pistol with him at night at home. Punzell also admitted to having suicidal thinking, but denied having a specific plan.  He noted that he suffered from intrusive images of the trauma he witnessed in Vietnam.  Dr. Brouwer opined that Punzell had a negative self image.  Dr. Brouwer opined that Punzell's depressive symptoms and PTSD had greatly impacted his life and interfered with his job performance and relationships.  Dr. Brouwer diagnosed Punzell with PTSD and depression and assessed a Global Assessment of Functioning ("GAF") score of 50.  A GAF score is a judgment of a patient's overall level of functioning, not including impairments due to physical or environmental limitations. *American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. revision 2000) ("DSM-IV-TR").  A GAF score in the 41-50 range indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  *Id.* at 32, 34.  Punzell told Dr. Brouwer that he had been started on Citalopram, a kind of depression medication, but that he had not taken it consistently as his "overall attitude was that he [could] take care of things himself."  Dr. Brouwer re-started Punzell on Citalopram.  When Punzell returned on September 17, 2004, he noted that he had three panic episodes within 10 days.  He reported no clear benefit with the Citalopram.  Dr. Brouwer took Punzell off of Citalopram and put him on Sertraline.

On October 25, 2004, Punzell returned to the VA Hospital and reported to Mary Lightwine, R.N., that he was having reflux symptoms including waking up with a mouth full

---

[4] In the psychological or psychiatric context, "labile" means "free and uncontrolled mood or behavioral expression of the emotions."  *Id.* at 1037.

of blood in the mornings. He also reported that his right ear was burning and he was having pain in the right side of his neck. Dr. Parrish prescribed Omeprazole and referred Punzell for an EGD.[5] Dr. Walid F. Makdisi, M.D. of St. John's Regional Medical Center in Joplin, Missouri, upon referral of Dr. Parrish, performed an EGD with gastric biopsies on November 8, 2004. These tests revealed a sliding hiatal hernia and nonspecific gastritis.[6]

When Punzell returned to the VA Hospital on November 17, 2004, he noted that he had a dizzy spell the week before and that his eyes still hurt. He noted light sensitivity and problems focusing. Dr. Parrish diagnosed him with sensorineural hearing loss and vertigo. Dr. Brouwer also evaluated Punzell on November 17, 2004, and noted that he had benefitted from his depression medication Sertraline with an improved mood and better tolerance for social situations.

Punzell reported to otolaryngologist Dr. Carlton Chambers, M.D., in November 2004, an MRI was ordered as the exam and vertigo pattern did not fit the expected BPPV.[7] The MRI showed evidence of small vessel disease with micro hyperintense foci. Punzell returned for a hearing screening in February 2005. He was diagnosed with stable bilateral asymmetrical hearing loss.

---

[5] An esophagogastroduodenoscopy (EGD) is an "[e]ndoscopic examination of the esophagus, stomach, and duodenum usually performed using a fiberoptic instrument." STEDMAN'S at 671.

[6] Gastritis is an "inflammation, usually musosal, of the stomach." *Id.* at 790.

[7] "BPPV" or "benign paroxsysmal positional vertigo" is "a recurrent, brief form of positional [vertigo] occurring in clusters[.]" *Id.* at 2119.

On March 7, 2005, Punzell reported to optometrist Dr. David Werner for treatment of visual discomfort associated with his episodes of dizziness. Ocular health and binocular function were all normal. Dr. Werner diagnosed Punzell with dizziness becoming slightly less in intensity and frequency, presbyopia, and mild dry eyes.

In April 2005, Punzell was seen by Dr. Ricky L. Kime, M.D. Punzell described his depression to Dr. Kime as "intermittent."

Punzell again reported to Dr. Brouwer on May 24, 2005. He noted that he had two episodes of blindness, one in March and one in May. Dr. Brouwer noted that he told her about the symptoms in a matter-of-fact way. Dr. Brouwer opined that Punzell's lack of concern was striking. Punzell noted that his friends had often commented on his lack of concern. He was referred to primary care for evaluation. Dr. Brouwer diagnosed Punzell with PTSD, depression and a GAF score of 50. The same day, Dr. Randal Hamric evaluated Punzell for the loss of vision. Dr. Hamric arrived at alternative diagnoses of either a transient ischemic attack or an ocular migraine. He was told to go to the nearest emergency room if the episode happened again. A neurology appointment was scheduled.

Punzell reported for his neurology consult with Dr. Minh-Tam Dang on July 26, 2005. Punzell reported vision disturbance and vertigo. Dr. Dang opined that Punzell was suffering from a possible transient ischemic attack or amaurosis. Punzell was told to continue taking low dose aspirin and to increase his physical exercise.

On November 23, 2005, Punzell reported for an orthopedic consult with reports of left shoulder pain. Judy Petermann, APN, in the Orthopedics Section, diagnosed Punzell with tendonopathy of the left shoulder and recommended conservative management.

When Punzell returned for psychiatric treatment with Dr. Brouwer in February 2006, he reported an increase in depressive symptoms after having stopped his medications due to fatigue. He also discussed his tendency to become reclusive and having lost all of his friends since his last divorce. His medications were again restarted.

When Punzell returned for treatment with Dr. Brouwer on June 19, 2006, he reported being unable to keep a job, but said he was unsure why. Punzell reported that he was fired from many jobs and did not know the reason why. He noted altercations with coworkers and others referring to him as crazy. On July 24, 2006, Punzell reported to Dr. Brouwer that he was suffering from anxiety around people. He reported being stressed to come to the appointments. He noted that he was very orderly and would be distressed when his life felt like it was out of control. Punzell indicated that he did not have thoughts of self-harm at that time, but stated that he was wondering "why am I here."

On September 22, 2006, Punzell reported to a Compensation and Pension Exam at the VA Hospital. It was noted that Punzell always carried a gun and was aggressive. His third wife indicated that their relationship had ended because he was unable to be with people. Punzell noted that he had stopped dating because it had become too stressful. It was opined that Punzell continued to have problems with post-traumatic stress disorder triggered by trauma he experienced in Vietnam and which continued to be manifested by intrusive

7

memories, nightmares, diminished interest in normal activities, detachment from others, restricted affect, sleep disturbance, anger outbursts, and concentration problems. Punzell was diagnosed with post traumatic stress disorder and assessed a GAF score of 45, "indicating inability to keep a job, massive difficulty in the marital sphere, and complete social isolation." (Tr. 159).

### B. Punzell's Function Report

On February 7, 2005, as part of his application for benefits, Punzell completed a "Function Report - Adult" describing his conditions and his activities. According to that form, Punzell reported that he had no problems with personal care (i.e., dressing, bathing, shaving, feeding himself, etc.), that he prepared his own meals, that he did laundry once a week and could clean and do yard work, that he walked, drove a car, rode a motorcycle with others, shopped for groceries on his own, and was able to pay his bills and handle his money by himself. He further indicated that he was adequate at following written instructions and "sometimes o.k." with spoken instructions, and that he had trouble dealing with coworkers and supervisors and did not handle stress or changes in routine well.

### C. Hearing before the ALJ

Punzell appeared before ALJ Linda Carter on October 19, 2006. He testified that he began to have symptoms of PTSD in 1985 including recurring dreams and memories of the time in Vietnam. He said he finally quit working because of an inability to deal with people. He testified that his problems had worsened since he quit working. Punzell testified to problems in his work relationships as well as his personal relationships. He stated that his

depression caused irregularities in his sleep patterns. He also testified to problems with Meniere's including feeling dizzy and feeling like the room was spinning. He said his Meniere's symptoms had been occurring every four to five months, but had started to occur twice a week. He testified to problems sleeping and said that he experienced headaches on a weekly basis that lasted six to ten hours at a time.

Also testifying before the ALJ was a vocational expert ("VE"). The VE identified Punzell's past relevant work as: a sales route driver, a semi-skilled position at a medium exertional level; a customer service order clerk, a semi-skilled position at a sedentary exertional level; a yard worker, an unskilled position at a heavy exertional level; an office clerk, a semi-skilled position at a light exertional level; and a sales representative, a semi-skilled position at a light exertional level. The ALJ asked the VE to consider whether Mr. Punzell could perform this past relevant work, or any work in the national economy.

The ALJ instructed the VE to assume that Punzell had the following impairments: post-traumatic stress disorder, depression, bilateral sensory neural hearing loss, tinnitus, vertigo with a history of a diagnosis of Meniere's disease, a history of tendonopathy affecting the left shoulder, hiatal hernia, gastroesophageal reflux disease, allergies, and high blood pressure. The ALJ instructed the VE to assume that because of these conditions, Punzell had no limitations as to physical exertion, that because of vertigo and a history of diagnosis of Meniere's disease he could not be exposed to significant unprotected heights, could not be exposed to dangerous or unguarded moving machinery, and could not do any commercial driving. The ALJ instructed the VE to assume that Punzell would need to use bilateral

9

hearing aids or perform work only requiring face-on communication, and that significant telephone work would have to be avoided. The ALJ instructed the VE that Punzell would need to avoid public contact and customer service as part of his job duties, to have only minimal contact with his coworkers and supervisors and could not be required to engage in "teamwork," and would be limited to simple to detailed, but not complex job instructions.

Given the ALJ's assumptions, the VE concluded that Punzell would not be able to perform any of his past relevant work. However, the VE found that Punzell would be able to perform work, despite the assumed conditions, as either an automobile detailer or as a laundry worker. The ALJ issued an unfavorable decision on November 8, 2006. Punzell filed a Request for Review of Hearing Decision on November 20, 2006. On December 27, 2006, Punzell's attorney submitted additional medical records to the Appeals Council. The Appeals Council denied Punzell's Request for Review in an order dated March 26, 2008.

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007).

10

The Commissioner's regulations governing determinations of disability establish a five-step sequential evaluation process which ALJs must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520; 416.920 (2008). In the first three steps of the process, the Commissioner determines: first, whether the claimant is engaged in substantial gainful activity during the period at issue; second, whether he or she has a medically determinable impairment that is "severe" under the meaning of the Act; and third, whether the claimant suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, a claimant must establish that he or she is not able to return to his or her past relevant work. *Id. See also, e.g.*, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). If the claimant establishes that he or she is unable to return to past relevant work, the burden shifts to the Commissioner to show that the claimant can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; 416.920 (2007). The Commissioner may meet this step five burden by relying on the medical-vocational guidelines or on vocational expert testimony.

### A. The ALJ's Decision

The ALJ concluded that while Punzell suffered from the severe impairments of post-traumatic stress disorder, depression, bilateral sensorineural hearing loss, vertigo, and history of tendonopathy of the left shoulder, these impairments did not meet or equal a listed impairment. The ALJ concluded that Punzell was unable to perform work involving climbing of or exposure to significant unprotected heights, involving exposure to potentially dangerous, unguarded moving machinery or involving commercial driving, that he was able

to climb one, two, or three steps vertically, but was otherwise unable to perform climbing and that he was limited to work involving simple to detailed, but not complex, instructions. The ALJ further found that Punzell: was limited to work that involves no public contact, no customer service and no team-work; could only have minimal contact with coworkers and supervisors, but was able to do jobs carried out in proximity to coworkers or supervisors; and would require the use of bilateral hearing aids or was limited to face-on conversation. Finally, the ALJ concluded that Punzell was unable to perform jobs which included telephone work.

Relying upon VE testimony, the ALJ determined that Punzell was not able to perform any of his past relevant work at step four of the sequential evaluation process. However, that at step five of the evaluation process the ALJ concluded, based upon VE testimony, that Punzell would be able to perform work either as an automobile detailer or a laundry worker, jobs which existed in significant numbers in the national economy. Therefore, the ALJ found Punzell not disabled within the meaning of the Social Security Act.

### B. The ALJ's Decision is Not Supported by Substantial Evidence

Punzell argues that the ALJ improperly discounted his credibility and that the RFC determined by the ALJ does not reflect the severity of his mental limitations.

A claimant's subjective testimony about his pain or other symptoms may be discounted by an ALJ if there are inconsistencies in the record as a whole. *Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). The ALJ must examine several factors in determining a claimant's

12

credibility: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004); *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ may discredit subjective complaints where there are "inconsistencies in the evidence as a whole," the ALJ must give reasons for discrediting a claimant. *Strongson*, 361 F.3d at 1072 (quoting *Goodale v. Halter*, 257 F.3d 771, 774 (8th Cir. 2001), and citing *Jones v. Callahan*, 122 F.3d 1148, 1151 (8th Cir. 1997)).

While the ALJ stated her reasons for discrediting Punzell's allegations of disability, those reasons were not supported by evidence in the record. First, the ALJ found that Punzell's reported daily activities were inconsistent with his allegations of disability. The ALJ found that Punzell's Function Report showed that he "engage[d] in a fairly normal range of daily activities . . . inconsistent with his allegation of disability." However, Punzell's ability to "engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of [his] ability to engage in substantial gainful activity." *See Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003) (citing *Kelley v. Callahan*, 133 F.3d 583, 588–89 (8th Cir. 1998)).

The ALJ also discounted Punzell's allegations of disability because she found that his medical records "[did] not support [his] allegation of disability." The ALJ found "no indication that [Punzell's] impairments, singly or in combination, result in functional limitations that are so serious as to totally preclude work[,]" and because "[n]o physician or

13

other health care provider who examined or treated [Punzell had] opined that he [was] unable to maintain employment."  To the contrary, Punzell's medical records indicate that Dr. Brouwer – his treating physician – had consistently assessed a GAF score in the 41-50 range, indicating "serious" impairments in social, occupational, or school functioning.  Further, those records indicate that other health care providers had also found severe mental impairments that would prevent Punzell from working.  Punzell was assessed with a GAF score of 45 during his VA Compensation and Pension Exams, and the examining physician noted that this score indicated an "inability to keep a job, massive difficulty in the marital sphere, and complete social isolation."  The ALJ's conclusions that: (1) Punzell's medical records do not indicate an inability to work as a result of his mental impairments, and that (2) those medical records are inconsistent with Punzell's allegations of disability are not supported by substantial evidence in the record.

Based upon her credibility assessment, the ALJ concluded that Punzell's mental impairments resulted in only a mild restriction in his activities of daily living, only moderate limitations on his social functioning, and only mild to moderate limitations of his ability to maintain concentration, persistence or pace, and that they had resulted in no episodes of decompensation of extended duration.  Based upon the limitations the ALJ found credible, she determined that Punzell was "limited to work involving simple to detailed, but not complex instructions . . . to work that involves no public contact, no customer service and no team-work . . . [and] to work involving minimal contact with co-workers and supervisors," though she found he was able to do jobs in proximity to coworkers or supervisors.

The overwhelming evidence in the record, including Punzell's testimony and his medical records, indicates that Punzell suffers from more than mild or moderate mental limitations; it indicates that he suffers from the severe mental conditions of PTSD and depression which, in conjunction with Punzell's physical limitations, prevent him from performing substantial gainful activity. The ALJ found Punzell's allegations of disability to be not credible and based her RFC determinations on those limitations she found credible. Because the reasons the ALJ gave for discrediting Punzell's allegations are not supported by substantial evidence in the record, neither are the ALJ's credibility determinations nor her determination of Punzell's RFC supported by substantial evidence. Punzell has met his burden of establishing disability.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Punzell's Petition [Docs. ## 1, 5] is GRANTED. The decision of the ALJ is REVERSED and the case is REMANDED with instructions to award benefits.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: March 31, 2009
Jefferson City, Missouri